## PIKE COUNTY.

JANUARY TERM, 1884, No. 58.　　　　　FEBRUARY 25, 1884.

# Mitchell *v.* Newman.

| 4p | 443 |
|---|---|
| 35 SC | 572 |

1. An agreement of submission to arbitration by two partners of the matters in dispute between them, which contains, in addition to the mere submission, a stipulation that one partner, shall give to the other possession of the books and papers of the firm, and that the latter shall become the liquidating partner with full power to dispose of its assets, and pay its indebtedness therewith, is, upon sufficient consideration, to make the submission irrevocable when made.

2. An attempted revocation by the defeated party of a submission to arbitrators just as the award is about to be announced, when there is persuasive evidence that he had substantial knowledge of the conclusion which had been reached, is not entitled to much favor, and cannot be asserted except under a clear claim of right.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of *Pike County.*

Amicable action of *assumpsit* by John B. Newman against William Mitchell.

The following is a copy of the submission:

"And now, to wit: February 20, 1882, it is agreed, by and between the said John B. Newman and William Mitchell, that all matters at variance between them, or which may arise in any effort of settlement between them, of their late partnership matters, accounts, individual claims one against the other, and any claims of the estate of Solomon Newman, deceased, against said late firm, and any claims of said late firm against the estate of said Solomon Newman, deceased, be, and are hereby, referred and

[Mitchell *v.* Newman.]

from time to time shall be referred, until all differences so arising shall be finally determined and adjusted, to C. W. Bull, J. H. Van Etten, and John D. Biddis, Esqs., they to hear any and all evidence offered by either party in their behalf, to examine all books and papers and accounts submitted to them by the parties, and upon same to make a final award or finding of their conclusions, to be signed by the said referees, or a majority of them, said finding to be final and conclusive between the said parties. And further, that the prothonotary of said county of Pike be authorized to enter a judgment against the above plaintiff or defendant in the above entitled action in accordance with the terms of said award and finding by said referees, to have the same effect as a verdict and judgment on same rendered by a jury in open court, upon any proper action or suit that might have been brought by said parties for the purpose above-mentioned. Said hearing and examination to be completed and award rendered on or before May 1, 1882. And it is further agreed that William Mitchell be and hereby is authorized to settle all accounts and claims of said firm, except as above mentioned, and to sell, transfer, and assign any notes, accounts, or judgments of said late firm, and to pay the money arising therefrom in liquidation of any proper indebtedness of said firm, and for that purpose said Mitchell to have possession of the firm books and papers, reserving the right to said John B. Newman, or his attorney, to examine and see the same, the said Mitchell to keep a separate account of all moneys so received or paid out by him. The said Mitchell not to charge or be allowed any compensation for his individual services in making said settlement, but to be authorized and empowered to pay for any necessary legal services he may require. Witness our hands and seals the day and year aforesaid.

(Signed)                JOHN B. NEWMAN,    [L. S.]
                        WILLIAM MITCHELL,  [L. S.]"

The arbitrators heard the evidence of both parties, and then held several meetings for consultation upon an award. At one of these meetings, held on April 29, 1882, Bull, who had been appointed in the interest of Newman, offered to sign an award in favor of the plaintiff for $1,800, if the other two arbitrators would sign also. This proposition Van Etten, who had been selected on Mitchell's part, refused. Biddis then proposed to sign an award with Van Etten for plaintiff in the sum of $1,500. This also was rejected by Van Etten. Biddis then stated that unless Van Etten would sign one of these awards, the award would be

$2,100. Mitchell then, through Van Etten, requested further time for examination, but this was refused on the ground that the submission fixed the 1st of May as the time for the award. Mr. Bull consulted Mr. Newman in regard to his willingness for a continuance; and Mr. Bull reported that Mr. Newman would agree thereto, provided each party should give to the other a bond with surety not to do any act or bring any suit at law, or otherwise, in any manner, prevent an award or finding of the arbitrators or referees during any extension of time as asked and as might be agreed upon—and further that the award would be accepted without exception or appeal when rendered.

The arbitrators then adjourned until May 1, 1882, in order to learn the conclusion of the parties. Mitchell refused to give the bond, and during the morning of that day, before the meeting, served upon Van Etten a notice of revocation of the submission setting forth:

"*Messrs. C. W. Bull, J. D. Biddis, and J. H. Van Etten, arbitrators:*

Please take notice that I hereby withdraw from the submission made in above case, and hereby give notice before the signing of the award that I decline to abide by said reference or be bound thereby."

Prior to the meeting at 2, P. M., Bull had sketched in pencil a form of award, but had not inserted any amount. At the meeting Van Etten stated that Mitchell had served a notice on him of a revocation, and had requested him to hand a copy to each of the other arbitrators. This he did, and then withdrew. Biddis then copied upon the submission the form of award sketched by Bull, inserting the amount $2,100, and entered it of record. It appeared that Mitchell had knowledge before the final meeting that the award would be against him.

Exceptions to the award filed by Mitchell were dismissed by the Court, and a rule to strike off the judgment and set aside the award discharged in the following opinion by McCollom, P. J.;

[After disposing of some minor exceptions not afterwards pressed.]

"This view leaves for consideration these questions: Was the submission revocable? and if so, was it revoked by proper instrument, and in time?

As a part of the agreement of submission, Mitchell was to have possession of the books of the dissolved partnership, and to settle its affairs. He was by said agreement

[Mitchell *v.* Newman.]

made the liquidating partner upon the terms therein stated. The agreement was entire. It possessed the elements of a contract upon sufficient consideration, and after its execution it was not in the power of either to revoke or cancel it without the assent of the other: McGeehen *v.* Duffield, 5 Barr, 499 ; Paist *v.* Caldwell, 25 P. F. Smith, 166.

We think, too, that the attempted revocation was defective in form : the submission was under seal, the attempted revocation was not. In Morse on Arbitration and Award, it is stated that 'the formality of the revocation must follow and conform to the formality of the submission. Thus, if the submission be under seal, so, also, must be the revocation. If the submission be in writing, the revocation must be written ; but if the submission be only verbal, then the revocation may be verbal also. If this rule be not complied with, a revocation, which is insufficient under it, will be of no effect.' We are not aware that this precise question has been determined in Pennsylvania, but in Dickerson *v.* Rorke, 6 Casey, 392, it was held that 'where a submission is in writing, it cannot be directly revoked except by a written instrument given to the arbitrators or a majority of them.'

It is probable that, under the authorities, the attempted revocation in this case would be held to be in time, as it was made before the award was signed or the exact amount agreed upon ; but it is clear from the evidence that Mitchell knew, before he attempted to revoke the submission, that the award, when made, would be against him, and it is a fair inference from the evidence that he knew that its amount would be $2,100 unless Van Etten, his former counsel, consented to the proposition of Biddis. If revocation is admissible upon the state of facts disclosed by this evidence, the policy of the rule which admits it is seriously questioned."

The defendant thereupon took this writ, assigning for error, *inter alia,* the action of the Court in holding the submission irrevocable, and in refusing to set aside the award.

*G. G. Waller* for plaintiff in error.

The submission was not a contract upon sufficient consideration. It gives him the liberty to settle accounts and claims, and pay over the money to those they owe, but he had that right before, as one of the partners. As a matter of convenience to themselves and their debtors, the books and papers are left with one of them, inasmuch

as they had separated, and could not both have the books at the same time. Newman does not agree to give anything for this work, and stipulates that Mitchell is not to receive anything. What rights did Newman relinquish? He had access to the books at all times, just as much as if he was the liquidating partner. It was for their mutual benefit that the books and accounts of the late firm should be settled. One party was no more interested in this than the other. That was not a matter submitted to the arbitrators, or with which they had anything to do, but which the parties chose to arrange for their own convenience, without any consideration moving either, beyond the legal right which either of them already had.

The learned judge says: "Mitchell was by the agreement made the liquidating partner upon the terms therein stated."

The mere fact that the agreement states a self-evident fact, or concedes a right already existing and undisputed, should not make it an essential factor in the submission, and for that alone, without any consideration, constitute it a binding contract: Johnson *v.* Andress, 5 Phila., 8.

*H. T. Baker* for the defendant in error.

The agreement to submit to arbitrators was a contract upon sufficient consideration to render it irrevocable. While it is true that Mitchell, before this agreement, had the right to settle the affairs of the firm as a partner, Newman had also the right. By the submission Newman gave it up: McGeehen *v.* Duffield, 5 Barr, 499. In this case Newman relinquished his right and gave Mitchell full power to settle accounts and claims, sell, transfer, and assign notes, accounts, and judgments, pay out moneys in liquidation of the debts, and to have sole possession of the books and papers of the firm. This, moreover, gave Mitchell the practical advantage of communication and dealings with old customers of the late firm at his new place of business. Further, Newman submitted to the arbitrators as a part of the adjustment of the several affairs in dispute between the parties his judgment, then due, and ripe for execution, and abstained from entering up and issuing execution upon the same. He also—with the consent of the other heirs of his father's estate—submitted to their determination all the matters of that estate connected with the firm, involving a large store account and rent for the premises occupied by the firm for the full term of partnership, and began no litigation in that behalf; thus, by this single method of adjudication

[Mitchell *v.* Newman.]

of the several differences between the parties, avoiding at least three different forms of legal proceedings : Williams *v.* Tracey, 14 N., 310.

The revocation at best was not in time, nor founded upon proper cause. No fraud or misbehavior of arbitrators is alleged; and if Mitchell, between Saturday, when the amount was agreed upon, (unless an extension was made by the parties,) and Monday, when the award was actually signed, simply concluded that he was dissatisfied with the conclusion reached by a majority of the arbitrators, the revocation was not warranted thereby. Under these circumstances, it was not in the power of Mitchell, "at the last moment, and after the referees had gone far into the case, suddenly to give a notice of revocation and avert a result;" Paist *v.* Caldwell, 25 P. F. S., 163.

In this case, the parties were a law unto themselves, and only gross misbehavior of the arbitrators or fraud could stop or set aside the award : Robinson *v.* Bickley, 6 C., 389 ; Paist *v.* Caldwell, 25 P. F. S., 166 ; Monongahela Nav. Co. *v.* Fenlon, 4 W. & S., 205 ; Gallup *v.* Reynolds, 8 W., 426 ; Lewis' Appeal, 10 N., 359.

MARCH 10TH, 1884.—PER CURIAM : This agreement of submission contains something more than a mere submission. It further stipulates that the defendant in error should give to the plaintiff in error possession of the books and papers of the firm, and that the latter should become the liquidating partner, with full power to dispose of its assets and pay its indebtedness therewith. This was a sufficient consideration to make the submission irrevocable when made. An attempted revocation just as the award is about to be announced, and when there is persuasive evidence that the party had substantial knowledge of the conclusion at which the referees had arrived, is not entitled to much favor. It cannot be asserted except under a clear claim of right. Such right did not exist in this case.

Judgment affirmed.